| | | |
|---|---|---|
| **BERNARD DURGIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TOWN OF MADISON, TOWN OF MADISON** | : | **CIVIL ACTION NO.** |
| **POLICE RETIREMENT BOARD, AND** | : | **3:10-cv-347 (VLB)** |
| **WILLIAM GLADSTONE,** | : | |
| **Defendants.** | : | **February 18, 2011** |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [Doc. #14]

The plaintiff, Bernard Durgin ("Durgin"), brings this action for compensatory and punitive damages against the defendants, the Town of Madison (the "Town"), the Town of Madison Police Retirement Board (the "Retirement Board"), and William Gladstone ("Gladstone"), Chairman of the Retirement Board (collectively, the "Defendants"). This case arises from the denial of Durgin's disability pension benefits by the Defendants. Durgin's complaint asserts claims for breach of contract (First Count); employment discrimination under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 et seq. (Second Count); violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Third Count); violation of the Employee Retirement Income Security Act ("ERISA"), 29 US.C. § 1001 et seq. (Fourth Count); violation of Article First of the Connecticut Constitution (Fifth Count); and deprivation of procedural and substantive due process rights

guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (Sixth Count).

Presently pending before the Court is the Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. #14]. For the reasons that follow, the Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Durgin was employed as a patrol officer for the Town of Madison Police Department, a municipal corporation formed under the laws of the State of Connecticut. Am. Compl. ¶¶ 2-3. On August 4, 2002, Durgin was on his way home from work when, while stopped at a red light at the intersection of the Post Road and goose Lane in Guilford, Connecticut, a 1994 Volvo being operated by an intoxicated person struck a 2000 Harley Davidson Motorcycle, which in turn struck Durgin's 1991 Ford Mustang from behind. Id. ¶¶ 7-8. After being struck, Durgin exited his vehicle and experienced a sharp pain in his back. Id. ¶ 9. He was subsequently transported to Yale New Haven Hospital, and was released later that same day. Id.

Thereafter, Durgin saw an orthopedic physician who diagnosed him with a contusion on the right elbow, and the aggravation of a pre-existing surgical condition as well as a lumbar spine sprain. Id. ¶ 10. Durgin's lower back pain remained severe throughout the fall of 2002, leading the Town to refer him for an Independent Medical Examination ("IME") with an orthopedist. Id. ¶ 11. This

physician issued a report in October 2002 indicating that Durgin may need surgical intervention.  Id.  Durgin's physician then referred him to a surgical orthopedic surgeon who recommended surgery.  Id. ¶ 12.  The Town's IME physician concurred with this recommendation.  Id. ¶ 13.

The surgical orthopedic physician performed a spinal fusion on Durgin on June 3, 2003.  Id.  ¶ 14.  By July 2003, Durgin's condition stabilized to the point where he was referred to begin aqua therapy.  Id.  He returned to work in November 2003, although the hardware from the spinal fusion surgery remained in his back.  Id. ¶ 15.  However, due to the occupational hazards of his profession, Durgin elected to undergo a second operation on September 23, 2004 to remove the hardware that remained in his back from the initial spinal fusion surgery.  Id. ¶ 15.  Since that time, Durgin has remained in pain and symptomatic from his August 2002 injury, including periods in which he experiences back spasms which render him disabled.  Id. ¶ 16.

By report dated September 13, 2005, Durgin's orthopedic surgeon assessed him with a 25% permanent disability of his lumbar spine.  Id. ¶ 17. Subsequent reports dated September 26, 2007 and November 13, 2007 prepared by Durgin's orthopedic surgeon indicated that Durgin's injuries and future prognosis made it infeasible for him to continue working as a police officer.  Id. ¶ 18.  This led Durgin to file for a disability retirement pension pursuant to the terms of the Madison Police Department Retirement Plan (the "Plan").  Am. Compl. ¶¶  4, 19.

The Plan was created by agreement of the Town and the members of the Madison Police Department through their union to provide retirement and related benefits, including disability benefits, for participants and their beneficiaries.  **Id. ¶¶ 31-32.**  The Plan establishes a procedure to administer the retirement benefits of the Town of Madison Police Department by granting the Retirement Board the powers to manage the retirement benefits, adjudicate entitlements, establish criteria for pension qualifications, conduct hearings, keep minutes and issue decisions regarding who is entitled to collect.  **Id.  ¶¶ 5, 31.**  The Retirement Board is the administrative agency created by the Town for the purpose of administering, implementing and supervising the Plan.  **Id. ¶ 4.**  Gladstone was the Chairman of the Retirement Board and was responsible for implementing the Plan, scheduling meetings of the Retirement Board, providing notice and conducting the application process, among other duties.  **Id. ¶ 6.**

In order to qualify for disability benefits under the Plan, Durgin had to meet the following definition of "totally and permanently disabled" as determined by the Retirement Board:  "(1) he is disabled as a result of injury or illness, including mental illness, sustained in the course of performing regular duties as a member of the Madison Department of Police Services without willful cause or wanton misconduct on his part; and (2) as a result of the disability he is totally and permanently incapacitated from performing his regular duties as a member of the Madison Department of Police Services."  **Id. ¶ 33.**

In compliance with the requirements of the Plan, Durgin submitted his orthopedic physician's reports dated September 26, 2007 and November 13, 2007,

which stated that he was unable to perform his duties as a police officer due to his physical impairments.  Id. ¶ 20.  On April 28, 2008, at the request of the Town, Durgin submitted to another IME performed by a different orthopedic physician than the physician to whom the Town had sent him in 2002 and 2003.  Id. ¶ 21.  This new IME physician agreed with the findings that Durgin is unable to perform the full duties of a police officer.  Id.  On May 20, 2009, the Retirement Board, under the chair of Gladstone, met to consider Durgin's application, but tabled the issue without resolution.  Id. ¶ 22.  On September 1, 2009, by writ of mandamus returnable to the Judicial District of New Haven, Superior Court of Connecticut, Durgin sought a court order for the Retirement Board to hold a hearing on his application.  Id. ¶ 23.

In an email dated August 25, 2009, counsel for the Town notified Durgin's counsel that the Retirement Board would meet to consider Durgin's application on September 3, 2009.  Id. ¶ 24.  This email was the only notification of the meeting that Durgin received.  Id.  In a letter dated September 8, 2009, the Human Resources Manager for the Town notified Durgin that the Retirement Board had unanimously denied his application.  Id. ¶ 26.  The Minutes of the Retirement Board's September 3, 2009 meeting were attached to the letter and indicated that the Retirement Board adjourned for an executive session at 8:15 a.m. to consider Durgin's application and then returned to regular session at 8:25 a.m., at which time the vote to deny the application was taken.  Id.  No findings or conclusions of law were issued with the decision of the Retirement Board.  Id. ¶ 27.  On September 14, 2009, Durgin filed a petition for reconsideration of the Retirement

Board's decision, which was denied via a letter from Gladstone dated September 24, 2009. Id. ¶¶ 29-30.

On October 15, 2009, Durgin filed suit in Connecticut Superior Court. His original one-count complaint was brought as an administrative appeal from the Defendants' denial of his application for a disability retirement pension pursuant to Section 4-183 of the Connecticut General Statutes. The Superior Court dismissed the administrative appeal with leave to file an amended complaint. On February 25, 2010, Durgin filed an amended complaint alleging that the Defendants breached their contract with him, violated the CFEPA, the ADA, and ERISA, and deprived him of his procedural and substantive due process rights under Article First of the Constitution of the State of Connecticut and the Fourteenth Amendment of the United States Constitution, as enforced by 42 U.S.C. § 1983. On March 9, 2010, the Defendants removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. [Doc. #1]. The Defendants filed the instant motion to dismiss on May 28, 2010. [Doc. #14]. Durgin filed his opposition on July 25, 2010. [Doc. #17]. The Defendants filed their reply on August 2, 2010. [Doc. #19].

## II. STANDARD OF REVIEW

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject

matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).  Id.  In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  In re AIG Advisor Group Sec. Litig., 309 Fed. App'x. 495, 497 (2d Cir. 2009).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).  In deciding a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), however, the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits."  State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

### III. DISCUSSION

#### A. CFEPA and ADA Claims (Second and Third Counts)

The Defendants move to dismiss Durgin's CFEPA and ADA claims for failure to exhaust administrative remedies. See Hayes v. Yale-New Haven Hosp., 82 Conn. App. 59, 59 n.2 (2004); Forts v. Ward, 621 F.2d 1210, 1215 (2d Cir. 1980); Golnik v. Amato, 299 F. Supp. 2d 8, 14, (D. Conn. 2003). In response, Durgin concedes that he did not file an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") or Equal Employment Opportunities Commission ("EEOC"), and agrees that his CFEPA and ADA claims should be dismissed on this basis. See Pl. Mem. in Opp. at 11-12 (citing Kucharski v. Cort Furniture, 536 F. Supp. 2d 196 (D. Conn. 2007)). Accordingly, these claims are dismissed.

#### B. ERISA Claim (Fourth Count)

Durgin asserts that the Defendants' alleged failure to adhere to the substantive and procedural agreement contained in the Plan violated ERISA, 29 U.S.C. § 1001 et seq. Am. Compl. ¶ 34. However, Section 1003 of ERISA excludes certain employee benefit plans from the Act's coverage. 29 U.S.C. § 1003(b). Among those types of plans exempted from ERISA's coverage are "governmental plans." See 29 U.S.C. § 1003(b)(1) ("[T]he provisions of [ERISA] shall not apply to any employee benefit plan if . . . such plan is a governmental plan (as defined in section 1002(32) of this title)[.]"). A "governmental plan" is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any

agency or instrumentality of any of the foregoing . . . ."  29 U.S.C. § 1002(32).

"The governmental plan exemption embodied in section 1003(b) evinces

Congress' intent to refrain from interfering with the manner in which state and

local governments operate employee benefit systems."  Roy v. Teachers' Ins. &

Annuity Ass'n, 878 F.2d 47, 49 (2d Cir. 1989).

It is evident from the allegations of the complaint and the terms of the Plan

itself that the Plan readily meets the definition of a "governmental plan" and is

therefore exempt from ERISA.  Durgin alleges that "the Town of Madison Police

Retirement Board is an administrative agency created by the Town of Madison for

the purpose of administering, implementing and supervising the Town of

Madison Police Department Retirement Plan."  Compl. ¶ 4.  The express purpose

of the plan is "to provide retirement and related benefits for Participants and their

Beneficiaries . . . ."  Pl. Mem. in Opp., Exh. A [Doc. #17-1], Section 1.2; Compl. ¶¶

31-32.  Thus, the Plan is clearly "a plan established or maintained for its

employees" by the Town of Madison, a political subdivision of the State of

Connecticut.  29 U.S.C. § 1002(32); see also Conn. Gen. Stat. § 28-1(12)

("'[P]olitical subdivision' means any city, town, municipality, borough or other

unit of local government.").

In opposition to the Defendants' motion, Durgin argues that the

governmental plan exemption has been waived because the Plan contains

language referencing or relying upon the provisions of ERISA.  Specifically,

Section 1.2 of the Plan provides that it "is intended to conform to, and shall be

interpreted . . . in accordance with the Employee Retirement Security Act of 1974,

and the regulations of the Department of Labor."  Pl. Mem. in Opp., Exh. A [Doc. #17-1], Section 1.2.  However, Durgin offers no support for the proposition that this language constitutes a waiver, rather than mere interpretational instructions as argued by the Defendants.  Instead, Durgin cites only the inapposite case of Bolssen v. UNUM Life Ins. Co. of America, 629 F. Supp. 2d 878 (E. D. Wis. 2009), which involved an interpretation of a different section of ERISA that applies only to pension and employee benefit plans maintained by Indian tribal governments.

The plaintiff in Bolssen, who worked as a custodian for a casino, argued that the disability plan at issue was not covered by ERISA because of the "governmental plan" exemption.  The district court's analysis required interpretation of the following specific provision:

> The term 'governmental plan includes a plan which is established and maintained by an Indian tribal government . . . and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).

29 U.S.C. § 1002(32).  The district court interpreted this provision to mean that "employee plans established and maintained by an Indian tribal government are exempt only if substantially all of the employees' services are in the performance of essential government functions, as opposed to commercial activities – even if the commercial activities are essential government functions."  Bolssen, 629 F. Supp. 2d at 881.  The district court held that, given the plaintiff's employment as a custodian for a casino, it was necessary to conduct "a fact-specific analysis of the plan at issue and the nature of its participants' activities" in order to

determine if ERISA's "governmental plan" exemption applied, rendering the issue inappropriate for resolution on a motion to dismiss. Id.

Unlike in Bolssen, no "fact-specific analysis" is necessary here, because the provision at issue in this case does not require the Court to determine whether plan participants are involved in the performance of "essential government functions" and not "commercial activities." Instead, the relevant provision in this case unambiguously exempts a plan from ERISA that is "established or maintained for its employees . . . by the government of any State or political subdivision thereof[.]" 29 U.S.C. § 1002(32). The Plan was established by the Town, a political subdivision, for its employees, and therefore clearly qualifies as a "governmental plan" that is exempt from ERISA. Further, the language contained in the Plan to which Durgin refers does not state that the Plan is covered by ERISA, but merely that it is intended to conform to and be interpreted in accordance with ERISA. Pl. Mem. in Opp., Exh. A [Doc. #17-1], Section 1.2. Finally, even if the Court were to apply the test discussed in Bolssen, there can be no question that the participants in the Plan, who are members of the Madison Police Department, are involved in the performance of "essential government functions" rather than commercial activities. Cf. Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316, 335 (2008) (describing police work as an essential government service). Therefore, Durgin's ERISA claim is dismissed for failure to state a claim upon which relief can be granted.

**C.** <u>State and Federal Due Process Claim (Fifth and Sixth Counts)</u>

Durgin further claims that the Defendants' alleged failure to adhere to the procedural and substantive agreements established in the Plan violated his procedural and substantive due process rights under Article First of the Connecticut Constitution and the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

Preliminarily, it is noted that the due process clauses of the United States and Connecticut Constitutions have the same meaning and impose similar limitations. <u>See</u> <u>Pansy Road, LLC v. Town Plan & Zoning Com'n of Town of Fairfield</u>, No. 3:05-CV-916(RNC), 2006 WL 1236781, at *1 (D. Conn. May 5, 2006) (citing <u>State v. Brigandi</u>, 186 Conn. 521, 542 (1982)). Thus, Counts Five and Six of Durgin's complaint will be considered together.

"In order to sustain an action for deprivation of property without due process of law, a plaintiff must first identify a property right, second show that the state has deprived him of *that* right, and third show that the deprivation was effected without due process." <u>Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington</u>, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks omitted). The Second Circuit has held that "municipal employee retirement benefits are constitutionally protected property," and that "[t]he entitlement to disability retirement is a constitutionally protected property interest for purposes of Section 1983." <u>Russell v. Dunston</u>, 896 F.2d 664, 668-69 (2d Cir. 1990). Therefore, Durgin possesses a constitutionally protected property

interest in his retirement benefits, which is entitled to the protection of procedural due process.

The Defendants do not dispute that Durgin has a property interest in his retirement benefits. They argue, however, that his due process claim fails because he was afforded all of the process to which he was due. The Defendants cite the United States Supreme Court's decision in <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985) for the proposition that, even in the event of termination, a public employee is constitutionally entitled only to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before being terminated. Because Durgin is not bringing a due process challenge based on a termination of employment, more directly on point are decisions from courts within the Second Circuit addressing the requirements of due process in cases in which police officers were denied disability retirement pensions. <u>See</u>, <u>e.g.</u>, <u>McDarby v. Dinkins</u>, 907 F.2d 1334, 1337 (2d Cir. 1990); <u>Calzarano v. Bd. of Trustees of the Police Pension Fund</u>, 877 F. Supp. 161, 164 (S.D.N.Y. 1995); <u>Chernoff v. City of New York</u>, No. 06-CV-2897 (CPS)(CLP), 2009 WL 816474, at *4 (E.D.N.Y. Mar. 26, 2009).

In <u>McDarby</u>, a police officer asserted a procedural due process claim following denial of his application for an accidental disability pension. The Second Circuit affirmed the district court's entry of summary judgment in favor of the defendants, finding:

> The procedures employed by the Medical Board and the Board of Trustees in determining McDarby's pension eligibility closely parallel

those we upheld as meeting the basic "notice" and "hearing" requirements of procedural due process in <u>Basciano v. Herkimer</u>, 605 F.2d 605 (2d Cir. 1978). McDarby's complaint makes clear that the Medical Board physically examined him, received written submissions that were proffered on his behalf, reviewed his medical records, and reconsidered its original adverse determination upon his request. Due process requires no more.

<u>McDarby</u>, 907 F.2d at 1337.

Similarly, in <u>Calzarano</u>, a police officer claimed that the defendants violated his civil rights by failing to provide adequate due process in considering his application for accidental disability retirement. The officer argued in opposition to summary judgment that due process required that the Board of Trustees of his department's pension fund conduct a hearing prior to determining the category of disability under which he would be retired. <u>Calzarano</u>, 877 F. Supp. at 164. The district court rejected this argument, explaining:

> Due process requires only an opportunity to be heard, that is, to present argument and evidence which support the applicant's position to the Board or person making the determination. Due process does not guarantee an opportunity to be heard in person . . . . Plaintiff submitted his argument and the opinion of his doctor in writing, and thus was given an opportunity to present evidence on his behalf on his claim for entitlement to ADR.

<u>Id.</u> at 164.

Finally, in <u>Chernoff</u>, a police officer asserted that he was denied his right to procedural due process when the defendant took disciplinary measures against him and determined that he was ineligible for service-related accidental disability retirement benefits. Relying upon the Second Circuit's decision in <u>McDarby</u>, the district court held that the basic requirements of due process were satisfied and therefore granted summary judgment in favor of the defendants. <u>Chernoff</u>, 2009

WL 816474, at *4.  The district court noted that the plaintiff was examined by the Medical Board, was afforded the opportunity to submit any evidence he wished in support of his application for disability benefits and, after his initial application was denied, upon the plaintiff's request the Medical Board reconsidered his application and again denied him disability benefits.  Id.

The Defendants argue that Durgin's due process claim must be dismissed because his counsel was provided notice of the hearing and an opportunity to prepare and present his case to the Retirement Board and, in addition, the Retirement Board reconsidered and affirmed its original determination upon his petition for reconsideration.  However, unlike McDarby, Calzarano, and Chernoff, here it is not apparent at this stage of the litigation that Durgin was given an opportunity to be heard as due process requires.  Instead, the facts alleged in the complaint suggest that Durgin was not provided a meaningful opportunity to present evidence in support of his entitlement to disability benefits under the Plan.

The complaint alleges that Durgin was examined by an IME physician at the behest of the Town, who agreed with his own physician's determination that he is unable to perform the full duties of a police officer.  On May 20, 2009, the Retirement Board met to consider Durgin's application, but tabled the issue without resolution.  There is no indication as to whether Durgin was provided notice of this meeting or what, if any, evidence was considered at the meeting. Thereafter, on August 25, 2009, counsel for the Town notified Durgin's counsel that the Retirement Board would again meet to consider Durgin's application on

September 3, 2009.  However, once again there is no indication as to whether Durgin was provided an opportunity to either appear at the meeting or to submit written evidence for the Retirement Board's consideration, and it is unclear what, if any, evidence the Retirement Board considered during the meeting.  Further, the Retirement Board failed to issue any findings in support of its decision to unanimously deny Durgin's application for disability benefits, even though it is alleged that both Durgin's physician and the Town's IME physician agreed that he was unable to perform his duties as a police officer as a result of his disability.  Finally, although the Retirement Board reconsidered its denial of Durgin's application upon his request, it is unclear what basis it relied upon in affirming its original decision.  Based upon these factual allegations, the Court holds that Durgin has stated a plausible claim for violation of his due process rights.  The parties will have an opportunity to conduct discovery in order to clarify the factual circumstances relating to Durgin's due process claim.

The Defendants also argue that Durgin's due process claim must be dismissed because he failed to exhaust the grievance procedure established in the collective bargaining agreement between the Town and the police officers' union, of which Durgin was a member during his employment with the Madison Police Department.  The collective bargaining agreement contains a provision setting forth a grievance procedure to be followed in settling employee grievances.  See Def. Mot. to Dismiss, Exh. A [Doc. #14-2], Art. 15.  A grievance for purposes of this procedure is defined as "an employee or Union complaint concerned with:  (a) Charge of favoritism or discrimination[;] (b) Interpretation

and application of Rules and Regulations and policies of the Police Department[;
or] (c) Discharge, suspension, disciplinary action or other matters relating to
interpretation and application of this Agreement." <u>Id.</u>

As a general matter, plaintiffs are not required to exhaust state
administrative remedies before bringing a Section 1983 action.  <u>See</u> <u>Patsy v.</u>
<u>Board of Regents</u>, 457 U.S. 496 (1982).  However, a "plaintiff cannot claim a lack
of due process when he chooses not to exhaust the process available to him . . . .
If a plaintiff had an opportunity to contest a defendant's actions but failed to do
so, there can be no claim for violation of his or her procedural due process rights
under 42 U.S.C. § 1983."  <u>Carroll v. Ragaglia</u>, 292 F. Supp. 2d 324, 341-42 (D.
Conn. 2003).

In support of their exhaustion argument, the Defendants rely upon <u>Hedges</u>
<u>v. Town of Madison</u>, No. 3:09CV1468 (PCD), 2010 WL 1279071 (D. Conn. Mar. 30,
2010), where the district court dismissed another Town of Madison police
officer's due process claim because he had withdrawn his grievance from
arbitration before the Connecticut State Board of Mediation and Arbitration and
therefore had not pursued all available administrative means of redress prior to
bringing suit.  However, <u>Hedges</u> is readily distinguishable from the instant case.
The plaintiff in <u>Hedges</u> was challenging his termination from the Madison Police
Department for violating Department rules and regulations.  <u>Id.</u> at *2.  Therefore,
there was no dispute that his complaint was subject to the grievance procedure
contained in the collective bargaining agreement.  Here, by contrast, it is not at all
apparent that Durgin's challenge to the Retirement Board's denial of his disability

benefits falls within the collective bargaining agreement's definition of a "grievance." Durgin is not bringing a claim based upon discrimination, discharge or other disciplinary action, or interpretation and application of Department rules and regulations. Instead, he is seeking disability benefits under the Retirement Plan, which is separate and distinct from the collective bargaining agreement. There is nothing in the Plan which indicates that complaints regarding disability benefits are to be submitted to the grievance procedure set forth in the collective bargaining agreement. Instead, the Plan entrusts the Retirement Board with the general administration of the Plan and responsibility for carrying out the provisions of the Plan. See Pl. Mem. in Opp., Exh. A [Doc. #17-4], Section 9.

In addition, Durgin contends that he was discharged by the Town in February 2008. See Pl. Mem. in Opp., Ex. B [Doc. #17-6], ¶ 6. Therefore, even assuming that the collective bargaining procedure applies, there is a question as to whether he qualified as an "employee" under that agreement who was eligible to invoke the grievance procedure at the time his application for benefits was denied in September 2009. See Garcia v. City of Hartford, 292 Conn. 334, 345-46 (2009) (holding that retired police officer was not an "employee" covered under grievance procedure set forth in a collective bargaining agreement and therefore he was not required to exhaust those procedures prior to bringing a court action to enforce rights under the agreement). For these reasons, it is not clear that Durgin could have availed himself of the grievance procedure outlined in the collective bargaining agreement in order to challenge the Retirement Board's denial of his disability benefits.

Finally, it must be noted that Durgin originally filed this action in Connecticut Superior Court as an administrative appeal of the Retirement Board's decision pursuant to Conn. Gen. Stat. § 4-183.[1]  The Defendants argued that the Superior Court lacked jurisdiction over the appeal because there is no statute authorizing an administrative appeal to the Superior Court from a decision of the Retirement Board.  See Pl. Mem. in Opp., Exh. C [Doc. #17-7], at 2-4.  The Superior Court agreed with the Defendants, holding that it lacked jurisdiction over Durgin's administrative appeal from the Retirement Board's decision because it had not been granted such authority by the legislature.  Pl. Mem. in Opp., Exh. D, [Doc. #17-8], at 3-4; Durgin v. Town of Madison, No. CV094032277S, 2010 WL 745620, at *2-3 (Conn. Super. Ct. Jan. 28, 2010).  The Superior Court noted, however, that Durgin "appear[s] to state a justiciable claim against the board for deprivation of property rights without due process of law which may be litigated in a plenary action," and therefore ordered Durgin to file an amended complaint containing a more particularized statement of his claims and the relief sought and omitting any request for appellate review of the board's decision.  Id. at *3.  Accordingly, the procedural history of this case supports Durgin's position that there is no further state procedure which he could have availed himself of before bringing suit in court, and this case is his only means of seeking redress from the Retirement Board's adverse decision on his application for disability benefits.

---

[1]  Pursuant to this statute, "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section."  Conn. Gen. Stat. § 4-183(a).

## D. Breach of Contract (First Count)

Finally, Durgin asserts that the Defendants breached the contract established by the Plan by failing to provide him formal notice that his application for disability pension was to be heard by the Defendants on September 3, 2009, by failing to provide him an opportunity to be heard and present evidence regarding his application, and by failing to consider any medical or other substantive evidence in denying his application.

The Defendants argue that the Court lacks subject matter jurisdiction over Durgin's breach of contract claim because he failed to exhaust administrative remedies by neglecting to utilize the grievance procedure outlined in the collective bargaining agreement. "It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement." City of Hartford v. Hartford Mun. Emp. Ass'n, 259 Conn. 251, 282-83 (2002) (citations omitted). "Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." Id.

The Defendants' exhaustion argument fails for the same reasons explained above in the context of Durgin's due process claims. See supra Section III.C. First, it is not apparent based upon the language of the Retirement Plan that police officers may challenge a denial of disability benefits granted by the Plan using the grievance procedure set forth in the collective bargaining agreement. Second, there is a dispute as to whether Durgin qualified as an "employee" under

20

the collective bargaining agreement at the time that his disability benefits were denied in September 2009 because he contends that he was discharged in February 2008, at which time he ceased being an employee of the Madison Police Department. See Garcia, 292 Conn. at 345-46.

In support of their argument, the Defendants cite Cerutti v. City of Torrington, No. LICV094002120S, 2010 WL 1497980, at *2 (Conn. Super. Ct. Mar. 15, 2010), where the Connecticut Superior Court distinguished Garcia on the basis that the plaintiff was eligible to file a grievance related to the defendant's handling of his application for disability pension while he was still an employee and therefore was not exempted from the exhaustion requirement. However, the facts of Cerutti were quite different from the facts of this case. There, the plaintiff alleged that the defendant breached its contract with him by failing to obtain second medical opinions regarding his psychological, orthopedic and hearing disabilities. Id. at *1. The Superior Court reasoned that, since he was not discharged until nearly a year after the defendant obtained its sole medical evaluation, he could have filed a grievance during this period rather than waiting until he was no longer an employee and therefore no longer eligible to file a grievance. Id. at *2. In this case, by contrast, Durgin is not challenging the Defendants' failure to obtain adequate medical opinions. Indeed, he alleges that the medical opinion provided by the IME physician agreed with his physician's findings that he is disabled from performing his duties as a police officer. Rather, Durgin is challenging the Defendants' alleged failure to provide him an opportunity to be heard and present evidence on his application for disability

benefits, as well as the Retirement Board's failure to base its decision denying his application on any substantive evidence, during the September 2009 hearing. At the time of the hearing, Durgin was not an employee of the Madison Police Department and therefore, under the reasoning of <u>Garcia</u>, he was not eligible to file a grievance regarding the challenged conduct, assuming that the grievance procedure even applies to disability benefits under the Plan. Accordingly, the Defendants' motion to dismiss is denied with respect to Durgin's breach of contract claim.

## IV. <u>CONCLUSION</u>

Based upon the above reasoning, the Defendants' motion to dismiss [Doc. #14] is GRANTED IN PART and DENIED IN PART. Durgin's claims for violation of the CFEPA, the ADA, and ERISA (Second, Third, and Fourth Counts) are hereby dismissed. This case will proceed with respect to Durgin's breach of contract and federal and state due process claims (First, Fifth, and Sixth Counts).

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: February 18, 2011.